# In the United States Court of Federal Claims

No. 13-963C
(Filed:  August 14, 2014)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| | \* |
| **GRAY OWL SERVICES, INC.,** | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| **THE UNITED STATES,** | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER OF DISMISSAL

Before the Court is Plaintiff's claim for alleged breach of contract.  Plaintiff, Gray Owl Services, Inc., ("Plaintiff") filed its Complaint on December 6, 2013.  Plaintiff alleges that by failing to provide a timely performance evaluation, the Government ("Defendant") committed a breach of contract which caused Plaintiff to suffer a loss of annual income.  Defendant filed a Motion to Dismiss based on RCFC 12(b)(1) and 12(b)(6) on April 3, 2014.  For the reasons set forth below, the Court grants the Defendant's Motion to Dismiss pursuant to RCFC 12(b)(6).

### I.      Background

#### a.   Factual Background

Plaintiff is a business which provides, *inter alia*, tree and wildlife maintenance services. In 2007, the United States Department of Agriculture – Forest Service issued a solicitation for a multi-award, Indefinite Delivery/Indefinite Quantity ("IDIQ") contract to provide for tree-snagging services in order to create structures for cavity nesting wildlife in the Pacific Northwest.  Compl. ¶ 2.  The contract specified a base period of one year ending on December 31, 2008, with four option years that could extend the life of the contract through December 31, 2012.  Def.'s Mot. to Dismiss Exhibit A at 15.  The government chose three contractors based on the solicitation, one of which was the Plaintiff.  Compl. ¶¶ 19, 37.  The Government then issued task orders upon which the three approved providers could bid.  Def.'s Mot. to Dismiss at 1-2.

Plaintiff completed its last Task Order related to the contract on December 30, 2010 and the order was inspected and accepted on January 20, 2011.  Compl. ¶ 15.  On April 7, 2011, Plaintiff received a letter of Notice of Final Acceptance for all work completed under the contract, which stated that Plaintiff's "continued interest and participation in the acquisition program of the USDA-Forest Service is welcomed."  Compl. Exh. 4A.  Believing itself to be in

good standing with the Government, Plaintiff submitted bids on three additional task orders in the summer of 2011 but was not selected, despite being the lowest bidder on each task order. *Id.* at ¶ 39.

As part of a FOIA request, Plaintiff obtained an inter-office e-mail explaining why Plaintiff's bid was rejected. According to the e-mails, although the work was "finished [and the] quality was fine," Gray Owl owner Steve DiBiase "had difficulty communicating[,] threatened and harassed the COR's and Inspectors[, and turned] in incomplete and inaccurate paperwork and not on time." *Id.* Exhibit 7b. Thus, it was concluded that "[d]ue to these difficulties that increase the cost of administration of the contract, I recommend awarding to the new low bidder … both Task Orders." *Id.*

Plaintiff filed a bid protest with the GAO, which was denied on November 4, 2011. *Matter of: Gray Owl Services, Inc.*, B-405458, B-405703. The GAO found that the rejection of Plaintiff's bid was reasonable because the task orders stated that "past performance, quality control, and price" would be factors considered in issuing the task orders. *Id.* at 2. Thus, the GAO concluded that "the agency's assessment of Gray Owl's past performance was reasonable." *Id.* at 5.

### b.  The Complaint

The precise legal basis of the Plaintiff's Complaint before the Court is unclear. Certainly, it highlights no specific counts with which it charges the Government. That said, the Court discerns the same two possible bases for the Complaint as the Government has identified in its motion to dismiss: a bid protest for damages that purportedly arise from the three task orders issued in the Summer of 2011 and a breach of contract charge for the Government's alleged breach of certain contract terms allegedly contained in the original contract.

These two possible "Counts" can be fairly summarized as follows. With respect to the former, Plaintiff challenges the Government's decision not to award it the Task Orders based on its past performance. Notably, this view of the case is supported by Plaintiff's decision to file a GAO protest on virtually identical facts as those now before the Court. This particular "Count," however, is expressly disclaimed by Plaintiff in its response to the Government's motion, so the Court need not address it in detail.

Because Plaintiff has not disclaimed the second reasonable reading of its Complaint, the Court's analysis centers on it. Plaintiff's Complaint states that "[t]he applicable Federal Acquisition Regulation (FAR) is 42.1503d (42.1503b in 2011) incorporated by reference in Contract." Compl. ¶ 7. The heart of Plaintiff's case is that FAR 42.1503d states that "Agency evaluations of contractor performance, including both negative and positive evaluations, prepared under this sub-part shall be provided to the contractor as soon as practicable after completion of the evaluation. The contractor will receive a CPARS-system generated notification when an evaluation is ready for comment." FAR § 42.1503d(d). Although Plaintiff received its final close out letter on April 7, 2011, the performance report was not entered into the PPRS system until September 30, 2011. Compl. ¶ 8. This delay, according to Plaintiff's allegations, constitutes a breach of contract.

Moreover, this alleged breach cost Plaintiff the opportunity to secure other business opportunities while it was bidding on the Summer 2011 Task Orders. Specifically, Plaintiff claims that because of this reliance, its 2011 income was "less than half of what [it] would otherwise have been, and [has] been in the years before and after 2011." Compl. ¶ 36. As relief, Plaintiff asks for $48,251.49 which "is estimated to be the earnings the Plaintiff and his employees would have earned on the three Task Orders the contractor was low bidder on and had a reasonable expectation of award, but was not awarded." Compl. ¶ 43.

## II.     Standard of Review

### a.   Motion to dismiss under RCFC 12(b)(1)

A motion brought pursuant to RCFC 12(b)(1) challenges the Court's subject matter jurisdiction. *See* RCFC 12(b)(1). Subject matter jurisdiction may be challenged at any time by the parties. *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993). Indeed, this Court's jurisdiction to entertain claims and grant relief, like all Federal courts, depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff, who must establish jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). Even so, when faced with a motion to dismiss for lack of subject matter jurisdiction, a court must assume that all undisputed facts alleged in the complaint are true, and it must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

### b.   Motion to dismiss under RCFC 12(b)(6)

RCFC 12(b)(6) allows for the dismissal of a complaint if, assuming the truth of all the allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). When analyzing a motion to dismiss under RCFC 12(b)(6), the Court must also accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991), and "the [f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III.    Discussion

### a.   This Court has subject matter jurisdiction under RCFC 12(b)(1)

Because the United States has sovereign immunity, it can be sued only if it expressly consents to suit. *United States v. Navajo Nation*, 556 U.S. 287 (2009). It is well settled that the Court of Federal Claims possesses jurisdiction to hear breach of contract claims. The United States has waived sovereign immunity for breach of contract claims via the Tucker Act, which provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render

judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States."  28 U.S.C. § 1491(a)(1).

One principle of contract law holds that a party may seek damages in any action for breach of contract unless the contract at issue provides otherwise.  *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality opinion) (citing, *e.g.*, *Restatement (Second) of Contracts* § 346, cmt. a (1981)).  In government contracts, as with private agreements, there exists a presumption "in the civil context" that a damages remedy will be available upon a breach.  *Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001).  As a result, in a contract claim under the Tucker Act, the contract at issue does not have to mandate monetary relief in the event of a breach.  *See Westover v. United States*, 71 Fed. Cl. 635, 640 (2006) (citing *Ontario Power Generation v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004); *Martinez v. United States*, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003); *Hamlet v. United States*, 63 F.3d 1097 (Fed. Cir. 1995)).  Only Tucker Act claims not sounding in contract must seek money damages on the basis of a constitutional provision, statute, regulation, or executive order.  *Westover*, 71 Fed. Cl. at 640.

The Defendant argues that Plaintiff's complaint must be dismissed under RCFC 12(b)(1) because this Court lacks subject matter jurisdiction.  Specifically, Defendant contends that Plaintiff's breach of contract claim is merely a disguised bid protest claim, designed "to bypass [41 U.S.C. § 253j(d)]'s jurisdictional bar."  Def's Mot. to Dismiss at 3-4.  According to Defendant, "[t]he issue presently before this Court is whether it may adjudicate individual task order claims brought under the CDA despite the restriction provided in section 253j(d)."  *Id.* at 4.

Whether or not this characterization is correct in a vacuum, Plaintiff has expressly disavowed any basis for relief relating to the Summer 2011 task orders.  The Complaint must, therefore, be read as a claim for breach of contract on the basis that the Government failed to prepare and provide to Plaintiff the relevant performance evaluation "as soon as practicable." Even though, as explained below, the Court sees no realistic factual basis for this case, the legal theory of the case does fall within the Court's jurisdiction.

The Court sees no reason why Plaintiff should not be allowed to proceed with its claim under a breach of contract theory.  Defendant need not fear this Court construing Plaintiff's claims as a bid protest because Plaintiff has not framed its argument as a bid protest and the Court has no intention of construing it as such.  Because this Court is authorized to hear breach of contract claims under the Tucker Act, this Court has subject matter jurisdiction over Plaintiff's claim.  Thus, Defendant's request to dismiss the Complaint under RCFC 12(b)(1) is denied.

### b.   Plaintiff has failed to state a claim upon which relief can be granted because FAR § 42.1503d was not incorporated into the service contract

To recover damages for a breach of contract, a plaintiff must allege and establish that: (1) a valid contract existed between the parties; (2) there was an obligation or duty arising out of that contract; (3) the Government breached that duty; and (4) plaintiff suffered damages that were caused by the breach of contract. *Zulueta v. United States*, 553 Fed. Appx. 983, 985 (Fed. Cir. 2014) (citing *San Carlos Irrigation & Drainage Dist. V. United States*, 877 F.2d 957, 959 (Fed.

Cir. 1989)).  The first element for breach of contract has been satisfied – there is no dispute that a valid contract existed between the parties.  The Court examines the other three elements in order.

### i. Obligation or Duty

The Court's inquiry begins with an examination of the second element, whether the Government had an obligation or duty arising out of the contract to provide a timely performance report to Plaintiff.  Plaintiff argues that 48 C.F.R. § 42.503(d) (also mentioned as FAR § 42.1503(d)) was incorporated by reference into the service contract.  Compl. at ¶ 7.  Defendant rejects this position, noting that "[n]owhere in the contract is FAR § 42.1503(d) cited, mentioned, or even implied."  Def.'s Mot. to Dismiss at 8.  Thus, it is argued, "no duty or obligation existed."  *Id.* at 7.  Plaintiff responds by noting "[t]he government appears to be correct that there is no specific reference in the contract to the requirement for performance evaluations.  However, the contract record shows many references by the parties to these performance evaluations, and that it was the intent of the parties to follow these regulations."  Pl.'s Resp. at 4.

Whether and to what extent material has been incorporated by reference into a host document is a question of law. *Cook Biotech, Inc. v. Acell, Inc.,* 460 F.3d 1365, 1376 (Fed. Cir. 2006) (citing *Advanced Display Sys., Inc. v. Kent State University*, 212 F.3d 1272, 1282 (Fed. Cir. 2000)).  "Incorporation by reference provides a method for integrating material from various documents into a host document . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *Advanced Display Sys., Inc.*, 212 F.3d at 1282 (citations omitted). "To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents." *Id.* "Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 30 (2d Cir. 1997) (citations omitted); *see also Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 (3d Cir. 2003) ("[i]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document must be ascertained, and incorporation of the document will not result in surprise or hardship"); *American Dredging Co. v. Plaza Petroleum, Inc.*, 799 F. Supp. 1335 (E.D.N.Y. 1992) ("[i]ncorporation by reference requires that the document to be incorporated be referred to and described in the contract so that the referenced document may be identified beyond doubt"). Incorporation by reference also requires not only that the incorporating document refer to the incorporated document, but that it bring the terms of the incorporated document into itself as if fully set out.  *Sucesion J. Serralles, Inc. v. United States*, 46 Fed. Cl. 773, 785 (2000) (citing *Firth Constr. Co., Inc. v. United States*, 36 Fed. Cl. 268, 275 (1996)).

Specific to the government contracts arena, the Court of Appeals for the Federal Circuit has noted:

> This court has been reluctant to find that statutory or regulatory provisions are
> incorporated into a contract with the government unless the contract explicitly

provides for their incorporation. *Smithson v. United States*, 847 F.2d 791, 794 (Fed. Cir. 1988). In *Smithson*, the court warned that wholesale incorporation of regulations into a contract would allow the contracting party to "choose among a multitude of regulations as to which he could claim a contract breach--and thus [a] wholly new ground of obligation would be summarily created by mere implication." *Id.* (internal quotation omitted).

*St. Christopher's Assocs., L.P. v. United States,* 511 F.3d 1376, 1384 (Fed. Cir. 2008).

With the above standard in mind, after viewing the documents Plaintiff cites as evidence of FAR § 42.1503(d) being incorporated into the contract, the Court concludes that the provision in question has not been incorporated into the contract. After reviewing the whole of the contract (submitted to the Court by Defendant as Exhibit A in its Motion to Dismiss), the Court is in agreement with both parties that FAR § 42.1503(d) is not mentioned anywhere within the document.[1] The contract is not lacking in references to various FAR provisions – in fact, an entire section is devoted to a checklist where the contracting officer can simply check a box indicating that a particular FAR provision is to be incorporated by reference into the contract. *See* Def.'s Mot. to Dismiss, Exhibit A at 17-20.

While Plaintiff contends that "the contract record shows many references by the parties to these performance evaluations, and that it was the intent of the parties to follow these regulations," Pl.'s Resp. at 4, the evidence cited is wholly irrelevant. The documents that Plaintiff alleges demonstrate the intention of the parties include an excerpt from the GAO bid protest decision, a FOIA response letter, several close out letters for issued task orders, midterm evaluations, and various e-mail correspondence between assorted government officials and Plaintiff. *See* Compl. Appendix A. Plaintiff's argument, however, is unavailing. None of these documents explicitly mentions or references performance evaluations, with the exception of an affidavit signed by Plaintiff's attorney regarding a FOIA request, and the GAO bid protest decision, in which Plaintiff raised a nearly identical argument. Except the GAO decision, none of these documents mention FAR § 42.1503(d). Finally, none of the documents proffered by Plaintiff existed at the time the contract was entered into on August 31, 2007. Because the documents fail to make any reference whatsoever to FAR § 42.1503(d) and because the documents were not in existence at the time the contract was executed, the Court finds that none of these documents support an inference that it was the intention of the parties to incorporate FAR § 42.1503(d) into the contract.

---

[1] Under RCFC 12(d), "matters outside the pleadings" may not be considered by the Court in deciding a motion to dismiss under RCFC 12(b)(6). However, although the court primarily examines the allegations in the complaint when considering a motion to dismiss pursuant to RCFC 12(b)(6), it may also consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'" *A&D Auto Sales, Inc. v. United States,* No. 2013-5019, 2014 U.S. App. LEXIS 6338, 2014 WL 1345499, at *1 (Fed. Cir. Apr. 7, 2014). There is no doubt that in a claim for breach of contract, the contract itself is integral to the claim. Thus, the Court may consider the contract when reaching its decision, even though it was submitted by the Defendant, without converting the motion to one for summary judgment.

### ii. Breach

Little in the parties' briefing is directed specifically to the issue of breach.  To the extent the Government addresses this issue, it is largely implicit in the Government's argument that it was under no duty or obligation.  Plaintiff, for its part, offers nothing of substance on this element.  It certainly does not explain how a delay of several months violates the "as soon as practicable" language contained in the FAR, especially in light of the Forest Service's transition from one past performance review system to another during that time period.

The Court has already explained that the past performance provision of the FAR was not incorporated into the contract, and why it finds no evidence of the parties' intent to include that provision in the contract.  Without a duty, there can be no breach.  Thus, in light of the contract's plain language, Plaintiff cannot prove breach under any set of facts.

### iii. Damages

Assuming, *arguendo*, that Plaintiff could demonstrate the existence of the Government's obligation and its breach thereof, the Court turns to the issue of damages.  Plaintiff alleges that it "was contra[c]tually obligated to submit … quotes, and maintain and reserve the capacity to perform Task Orders" on the contract.  Compl. ¶ 22; *see also* Compl. ¶¶ 27-28.  On the basis of this allegation, Plaintiff alleges that it could not devote its time to securing work from other customers.  *See* Compl. ¶¶ 32, 36-68.

The Government argues that Plaintiff once again attempts to build its case around non-existent contract terms.  It observes that nothing in the contract requires Plaintiff to limit its involvement with other customers.  Plaintiff's response fails to address this issue at all.

While the point is irrelevant given the Court's analysis above, it is worth noting that the contract is entirely silent on exclusivity.  The obvious conclusion to be drawn from this silence is that the contract is *not* exclusive.  The only decision to avoid involvement with other customers was one made by Plaintiff.  To this point, the Government's argument is correct.  That said, again assuming that Plaintiff adequately pled all other elements of a breach of contract claim, this point would not necessitate dismissal.  Perhaps Plaintiff's evident failure to even attempt to mitigate damages would lessen the remedy available by some amount, but it would not necessitate dismissal at this juncture.

## IV. Conclusion

For the reasons set forth above, the Court concludes that because FAR § 42.1503(d) was not incorporated by reference into the contract, the Government owed Plaintiff no duty under the contract to provide a performance report, timely or otherwise and the Government, therefore, breached no duty.  Hence, the Court hereby GRANTS the Government's Motion to Dismiss

pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.  The Clerk is directed to enter judgment accordingly.


_____
EDWARD J. DAMICH
Senior Judge